# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| RLF NAZARETH, LLC,            )<br>                              )<br>        Plaintiff,             )<br>                              )<br>        v.                    )<br>                              )<br>YORK RSG (INTERNATIONAL), LIMITED     )<br>and CERTAIN UNDERWRITERS AT LLOYDS )<br>OF LONDON ASCRIBING TO CONTRACT     )<br>1706400,                      )<br>                              )<br>        Defendants.           )<br>                              ) | Case No. 3:19-cv-0071 |

**ATTORNEYS:**

**RYAN C. MEADE, ESQ.**
QUINTAIRO, PRIETO, WOOD & BOYER, P.A.
MIAMI, FLORIDA
    *FOR THE PLAINTIFF RLF NAZARETH, LLC*

**JOSEPH D. SAUERWEIN, ESQ.**
**MATTHEW J. DUENSING, ESQ.**
DUENSING & CASNER
ST. THOMAS, UNITED STATES VIRGIN ISLANDS
    *FOR THE DEFENDANT CERTAIN UNDERWRITERS AT LLOYDS ASCRIBING TO CONTRACT 1706400*

**DOUGLAS L. CAPDEVILLE, ESQ.**
LAW OFFICES OF DOUGLAS L. CAPDEVILLE
CHRISTIANSTED, UNITED STATES VIRGIN ISLANDS
    *FOR THE DEFENDANT YORK RSG (INTERNATIONAL) LIMITED*

## MEMORANDUM OPINION

**MOLLOY, Chief Judge**

    **BEFORE THE COURT** is Defendant Certain Underwriters at Lloyd of London Ascribing to Contract 1706400 ("Lloyds") Motion to Enforce Umpire's Award and Determination of Coverage. (ECF No. 84.) Also before the Court is Plaintiff RLF Nazareth, LLC's ("RLF") Motion to Strike [Lloyds'] Motion to Enforce Umpire's Award and Determination of Coverage. (ECF No. 91.) For the reasons stated below, the Court will grant

Lloyds' Motion to Enforce, in part, and deny in part. The Court will also deny RLF's Motion to Strike.

## I. FACTS AND PROCEDURAL HISTORY

This matter arises out of Plaintiff RLF's effort to recover proceeds from an insurance policy it has with Defendant Lloyds for damages to RLF's property sustained during Hurricane Irma. (ECF No. 1.) Following the hurricane, RLF filed a claim with Lloyds for their insured property which included the main dwelling and three smaller cottages. *See* ECF No. 83. However, when Lloyds' agent, York RSG (International), Limited ("York"), sent out an adjuster to inspect the property, the adjuster incorrectly adjusted only the main house and not the accompanying cottages. (ECF Nos. 83 and 98.) Consequently, the adjuster concluded that the gross adjusted loss value for the RFL property was only $60,000. (ECF Nos. 83-1 and 98.) Believing there were well over $60,000 in damages, RLF retained its own adjustment firm, Global Consulting Systems, LLC ("Global Consulting"), to conduct an alternative adjustment on the property. (ECF Nos. 87 and 98.) Global Consulting found that the property had incurred a loss of $556,494.02. (ECF Nos. 87 at 5 and ECF No. 87-10.) While Lloyds allegedly sent over a new offer that included coverage for the cottages, the parties were still unable to agree to the value of the loss. *See* ECF 98 at 3. Given the impasse, Lloyds sought to invoke Section G of the RLF insurance policy, which states—

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the Described Location is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

(ECF No. 49-1.) RLF disagreed that Lloyds could invoke Section G at that time. (ECF Nos. 49 and 55.) Lloyds thus sought a motion to compel compliance with the appraisal process set out in Section G. (ECF No. 49.)

On April 26, 2021, the Magistrate Judge ordered the parties to proceed in accordance with the appraisal provision outlined in Section G of the policy. (ECF No. 59.) After going through the appraisal procedures, the parties' respective appraisers, and the designated umpire, agreed on an appraisal award on September 20, 2021. (ECF No. 70-1.) The Award determined that the Replacement Cost Value of the main dwelling (including the accompanying cottages) was $301,012.29. *Id.* The award listed the replacement value of the deck area ($21,000) and the pool area ($15,000) separately because there was still a dispute about whether those two areas were covered under the insurance policy. *Id.*

Lloyds' instant motion now seeks to enforce the Umpire's appraisal award and reduce the total recoverable damages by the deductible amount ($162,600). (ECF No. 84.) Additionally, while Lloyds' motion concedes that the deck area is covered under the insurance policy, the motion requests the Court to find that the pool area is not covered. *See id.*

In response, RLF filed a motion to strike believing that Lloyds' motion to enforce is effectively a motion for summary judgment, and therefore, the motion must comply with LRCi 56.1(a) (the local rule addressing how a party is to move for summary judgment). (ECF No. 91 at 2.) Because RLF contends that Lloyds' motion to enforce does not comply with LRCi 56.1(a), RLF argues that Lloyds' entire motion should be stricken from the record. *Id.*

In addition to the motion to strike, RLF filed a response to Lloyds' motion in which RLF argues that Lloyds does not need an order from the Court enforcing the appraisal award because the policy states that the loss shall be payable sixty days after the filing of an award. (ECF No. 95.) Therefore, RLF contends that Lloyds should have already paid the undisputed amount well before the motion to enforce was filed. *See id.* RLF's response also maintains that the policy covers the pool area. *See id.* With the facts considered, the Court will now address each motion in turn.

## II. DISCUSSION

### A. RLF's Motion to Strike

The Court will begin by addressing RLF's motion to strike. While "[i]t is beyond question that the District Court has the authority to strike filings that fail to comply with its

Case: 3:19-cv-00071-RAM-RM   Document #: 114   Filed: 07/12/23   Page 4 of 12

RLF Nazareth, LLC v. York RSG (International), Limited, et al.
Case No. 3:19-cv-0071
Memorandum Opinion
Page 4 of 12

local rules," a district judge generally has broad discretion to "depart from the strictures of its own local procedural rules where (1) it has a sound rational for doing so, and (2) so doing does not unfairly prejudice a party who has relied on the local rule to his detriment." *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 614 (3d Cir. 2018) ("[A] district court's application and interpretation of its own local rules should generally be reviewed for abuse of discretion."); *United States v. Eleven Vehicles, Their Equip. and Accessories*, 200 F.3d 203, 215 (3d Cir. 2000); *see also Nittany Outdoor Advert., LLC v. College Township*, 179 F. Supp. 3d 436, 439 (M.D. Pa. 2016) ("[L]ocal rules are binding on the district court unless there is a justifiable reason to excuse their command.").

The main contention in RLF's motion to strike is that Lloyds' motion to enforce is essentially a partial motion for summary judgment on whether the pool area is covered under the insurance policy and whether the policy deductible should be applied to the final appraisal award. Consequently, RLF contends that because Lloyds is effectively seeking summary judgment on these two discrete issues, Lloyds' failure to comply with the local rules for summary judgment is fatal.

Although RLF is likely correct that Lloyds' motion, practically speaking, involves a request for summary judgment,[1] RLF has not been detrimentally harmed or unfairly prejudiced by Lloyds' failure to comply with the local rules for summary judgment. The non-compliance here is Lloyds' failure to provide a statement of undisputed facts. However, the Court first notes that Lloyds' procedural misstep does not appear to have been in bad faith. As Lloyds correctly points out in its reply brief, district courts, including the District Court of the Virgin Islands, have ruled on coverage issues without requiring the movant to comply with the local rules for summary judgment. *See, e.g.*, *Korsun v. Guardian Ins. Co.*, Civ. No. 1:18-cv-00047, 2021 WL 4942810 at *2 (D.V.I. Oct. 22, 2021). Accordingly, it cannot be said that Lloyds filed the motion in bad faith to avoid the requirements set out in the local rules. Thus,

---

[1] Lloyds is asking the Court to interpret the legal effect of certain provisions in the insurance policy and find in their favor as a matter of law—the exact same request a party makes when seeking partial summary judgment. *See* Fed. R. Civ. P. 56 advisory committee's note to the 1946 amendment ("The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial."); *Authentic Apparel Grp., LLC v. United States*, 989 F.3d 1008, 1014 (Fed. Cir. 2021) ("Contract interpretation is a question of law generally amenable to summary judgment.") (quotations omitted).

Case: 3:19-cv-00071-RAM-RM   Document #: 114   Filed: 07/12/23   Page 5 of 12

RLF Nazareth, LLC v. York RSG (International), Limited, et al.
Case No. 3:19-cv-0071
Memorandum Opinion
Page 5 of 12

Lloyds' non-compliance may be excused. *See Pipko v. C.I.A.*, 312 F. Supp. 2d 669, 675 (D.N.J. 2004) ("Although typically the Court requires a movant to include a L. Civ. R. 56.1 Statement with his or her moving papers, failure to do so may be excused where there is no evidence of bad faith.") (citing *Fowler v. Borough of Westville*, 97 F. Supp. 2d 602, 606-07 (D.N.J. 2000));[2] *see also Davis v. Milligan*, Civ. No. SX-18-CV-337, 2020 WL 13261002, at *2 (V.I. Super. Ct. Dec. 3, 2020) (finding movant's "failure to include a statement of undisputed facts does not automatically render her motion fatally deficient.").

Moreover, in light of RLF's subsequent actions, Lloyds' failure to provide a statement of undisputed facts did little, if anything, to prejudice RLF. On March 18, 2022, RLF essentially eliminated any potential prejudice when it filed an opposition to Lloyds' motion to enforce. The filing includes a section titled "Statement of Material Facts." In that section, RLF appears to have provided all the facts it believes are relevant to the issues raised in Lloyds' motion to enforce. Thus, as long as the Court accepts all of RLF's statements of material facts as true, RLF will not be prejudiced by Lloyds' non-compliance. *See Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (explaining that summary judgment may be granted as long as "'there is no genuine issue as to any material fact.'") (quoting Fed. R. Civ. P. 56(c)). Accordingly, the Court will address Lloyds' motion with the assumption that RLF's statements of material facts are undisputed. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion.").

**B. Lloyds' Motion to Enforce**

    **i. Pool Area Coverage and Applicability of the Policy Deductible to the Appraisal Award.**

---

[2] The New Jersey Local Rule 56.1 at issue in *Pipko* is almost identical to this Court's Local Rule 56.1. *Compare* N.J. R. U.S. D. Ct. L. Civ. R. 56.1 ("On motions for summary judgment, each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue.") *with* D.V.I. LRCi. 56.1(a) ("[A] party moving for summary judgment shall file a separate statement of the material facts about which the movant contends there is no genuine issue.").

Case: 3:19-cv-00071-RAM-RM Document #: 114 Filed: 07/12/23 Page 6 of 12

RLF Nazareth, LLC v. York RSG (International), Limited, et al.
Case No. 3:19-cv-0071
Memorandum Opinion
Page 6 of 12

Before the Court determines whether the appraisal award is enforceable, the Court will address whether the pool area is covered and whether the policy deductible applies to the appraisal award.

### a. The Pool Area is Included

For the purposes of clarity, the pool area is comprised of a masonry and concrete structure surrounding the pool, the swimming pool itself, as well as a storage and mechanical room under the pool. (ECF No. 95-1 at 2.) In the motion to enforce, Lloyds contends that the "pool area" is not covered by the policy because the only potentially applicable coverage for the pool is "dwelling coverage." (ECF No. 85 at 6.) The policy defines dwelling coverage as:

> (a) the dwelling on the Described Location shown in the Declarations, used principally for dwelling purposes, ***including structures attached to the dwelling***; (b) materials and supplies located on or next to the Described Location used to construct, alter or repair the dwelling or other structures on the Described Location; and (c) if not otherwise covered in this Policy, building equipment and outdoor equipment used for the service of and located on the Described Location.

(ECF No. 85-4 at 17) (emphasis added). Based on the policy's definition of "dwelling," Lloyds argues that the pool area is not "attached to the dwelling," and therefore, may not receive dwelling coverage. Lloyds reasons that because the pool area is separated from the dwelling structure by a patio area, and no portion of the roof covers the pool area, the pool area cannot be considered attached to the dwelling. *See* ECF No. 85 at 6-7.

RLF disagrees. RLF first notes that the foundation is undisputedly covered under the policy. *See* ECF No. 95 at 8. Based on that fact, RLF proceeds to argue that the pool area is necessarily a structure attached to the dwelling because the pool area "comprises part of the concrete and masonry foundation of the dwelling." *Id.* Therefore, if the foundation constitutes a part of the dwelling, RLF asserts that the pool area must be considered "attached to the dwelling" because the pool area is directly connected to the foundation. *Id.* Accordingly, RLF argues that it is of no moment that the pool area and the dwelling appear, on the surface, to be separated by the concrete patio area because the dwelling's foundation and the pool area are connected underneath. *See id.* at 8-9.

Case: 3:19-cv-00071-RAM-RM Document #: 114 Filed: 07/12/23 Page 7 of 12

RLF Nazareth, LLC v. York RSG (International), Limited, et al.
Case No. 3:19-cv-0071
Memorandum Opinion
Page 7 of 12

In the Virgin Islands, "'the interpretation, construction and legal effect of an insurance policy is a question to be determined by the court as a matter of law.'" *Korsun*, 2021 WL 4942810 at *2 (*quoting James v. Guardian Ins. Co.*, 69 V.I. 26, 33 (V.I. Super. Ct. 2015) (alteration and emphasis in original) (additional internal citations omitted). In addition, the Virgin Islands Insurance Code specifically provides: "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy." 22 V.I.C. § 846; *see Coakley Bay Condo. Ass'n v. Cont'l Ins. Co.*, 770 F. Supp. 1046, 1050 (D.V.I. 1991); *James*, 69 V.I. at 33.

The "standard to be used when construing the insurance policy" is the "understanding of the ordinary person." *Evanston Ins. Co. v. Treister*, 794 F. Supp. 560, 569 (D.V.I. 1992). Accordingly, when reading the policy terms, Virgin Islands courts have made clear that judges 'should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them." *Williams v. Inter-Ocean Ins. Agency, Inc.*, Civ No. SX-18-CV-27, 2020 WL 8020082, at *4 (V.I. Super. Ct. Oct. 23, 2020); *James*, 69 V.I. at 33 (quoting *Devcon Int'l Corp. v. Reliance Ins. Co.*, Civ. No. 2001-201, 2007 WL 3391437, at *7 (D.V.I. Nov. 9, 2007). Therefore, if the ordinary meaning of the policy terms renders the policy unambiguous, no further inquiry is required. *See Phillip v. Marsh-Monsanto*, 66 V.I. 612, 623, 625 (2017) ("Where the language of a [policy] is clear and unambiguous, the parties' intent must be derived from the plain meaning of its terms.") (citations omitted); *James*, 69 V.I. at 34.

As set forth above, the insurance policy states that coverage applies to RLF's dwelling "including structures attached to the dwelling." (ECF 85-4 at 17.) Neither party disputes that the main house is the dwelling or that the pool area is obviously not the dwelling but rather a "structure." Therefore, the question at issue here is simply what it means for a structure to be "attached" to the dwelling. The Court concludes, as several other district courts have, that the ordinary meaning of the term "attached" is not ambiguous, as it is susceptible to only one reasonable interpretation in this context.[3] *See, e.g., Arch v. Nationwide Mut. Fire Ins.*, Civ. No.

---

[3] The Court notes that although the policy does not provide a definition for the word "attached" the lack of definition within the policy does not automatically render the term ambiguous. *See Aquino v. United Prop. & Cas. Co.*, 483 Mass. 820, 839 (2020) (quoting *Adamo*, 219 Cal. App. 4th at 1294).

88-5421, 1988 WL 122408, at *2 (E.D. Pa. Nov. 10, 1988); *Porco v. Lexington Ins. Co.*, 679 F. Supp. 2d 432, 438 (S.D.N.Y. 2009); *Mentesana v. State Farm Fire and Cas. Co.*, Civ. No. 07-0456-CV-W-ODS, 2008 WL 2225737, at *2 (W.D. Mo. May 28, 2008).

To ascertain the ordinary meaning of a word, it is often helpful to look to dictionary definitions. *See United States v. Husmann*, 765 F.3d 169, 173 (3d Cir. 2014) ("We look to dictionary definitions to determine the ordinary meaning of a word.") (citing *United States v. Geiser*, 527 F.3d 288, 294 (3d Cir. 2008). Black's Law Dictionary defines the word "attach" as "[t]o annex, bind, or fasten." *Attach*, BLACK' LAW DICTIONARY (11th ed. 2019). Merriam-Webster's dictionary provides the following definition for the term "attached": "connected or joined to something." *Attached*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/attached (last visited Mar. 17, 2023). The Court finds additional guidance in the Oxford English Dictionary, which defines the verb "attached" as: "to fasten, or join (a thing) to another thing, or a place or position, by sticking, tying, stitching, clipping, etc.; to affix. Also: to adjoin directly." *Attached*, OXFORD ENGLISH DICTIONARY, https://www.oed.com/view/Entry/12699?rskey=gITrpP&result=1&isAdvanced=false#eid (last visited Mar. 17, 2023). Based on these definitions, it is clear, that to be attached to the dwelling, the structure much be directly joined, connected, or fastened to the dwelling rather than attached by some intermediatory object or structure. *See Porco*, 679 F. Supp. 2d at 437-38; *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W. 3d 254, 258-59 (Tex. 2017); *Mentesana*, 2008 WL 2225737, at *3; *Adamo v. Fire Ins. Exch.*, 219 Cal. App. 4th 1286, 1294-95 (2013).

Applying this understanding of "attached" to the case at bar, the Court concludes that the pool area is a structure "attached to the dwelling." Specifically, the pool area is directly connected to the foundation of the dwelling, which, as a fundamental part of the dwelling, is considered the dwelling itself.[4] While the Court acknowledges that there are a number of cases that have found that a pool or other structure is not attached to a dwelling simply because the structure is sitting on or connected to a concrete patio or pool deck that is then

---

[4] *See Hampton v. First Protective Ins.*, 461 F. Supp. 3d 265, 273 (D.S.C. 2020) (finding that damage to dwelling constitutes damage to the dwelling).

attached to the dwelling,[5] this case is factually distinct. The critical factor in those cases was that the patio or deck adjoining the pool or other structure in question merely served aesthetic purposes rather than a necessary functional support for the dwelling like the foundation does.[6] In those cases, the courts correctly equated the patio or deck area between the structure in question and the dwelling to a lawn.[7] Therefore, the patio or deck was not a part of the dwelling; thus, it was of no significance that the pool or other structure was sitting on top of or even directly attached to the patio or deck area. In other words, courts in those cases found that only those structures directly affixed to the dwelling are considered "attached," but structures affixed to attachments are not.[8] Here, RLF asserts that the pool area is attached to the dwelling by virtue of the pool area being connected to the foundation, which is not attached to the dwelling but rather a fundamental part of the dwelling. Unlike a concrete patio that can be removed and replaced with grass without having a deleterious effect on the integrity of the dwelling, the foundation cannot. By removing the foundation, the dwelling would lose the structural support necessary to remain upright. Therefore, the foundation is an essential component of the dwelling, and thus, is a part of the dwelling. Accordingly, because the pool area is directly joined to the foundation, it is necessarily a structure attached to the dwelling.[9] Consequently, the pool is covered under the insurance policy.

---

[5] *See Arch*, 1988 WL 122408, at *2; *Porco*, 679 F. Supp. 2d at 437-38; *Mentesana*, 2008 WL 2225737, at *3; *Dahms v. Nodak Mut. Ins. Co.*, 920 N.W. 2d 293, 299 (N.D. 2018) (finding that a garage connected by a deck was not a structure attached to the dwelling "even though the garage was connected to the dwelling by the deck.").

[6] *See, e.g.*, *Arch*, 1988 WL 122408, at *2 ("Our finding that the pool and dwelling are separated by clear space [i.e., the concrete patio] is bolstered by the fact that the pool and the dwelling do not share a common foundation or roof.").

[7] *See Dahms*, 920 N.W. 2d at 298 (quoting *Porco*, 679 F. Supp. 2d at 439) ("'[T]he pool deck is a clear space separating the dwelling…from the swimming pool' because the 'Court is at a loss to understand how cement is nay more of a restriction of the space than grass would be.'"); *Arch*, 1988 WL 122408, at *3 (concluding unroofed twelve-foot concrete patio between pool and dwelling was clear space because "a patio merely comprises part of one's yard as does any lawn or garden")

[8] *See supra* note 5; *see also Aquino v. United Prop. & Cas. Co.*, 483 Mass. 820, 840 (2020).

[9] *See Aquino*, 483 Mass. at 840 ("the walkway also appears to be attached to the dwelling, in that it shares the same concrete slab. Similarly, the stairway is attached, as it touches and abuts the dwelling in such a way that it appears to have a seamless connection with the outer wall and foundation of the dwelling.").

### b. The Insurance Policy's Deductible Applies to the Appraisal Award

The Court finds no genuine dispute that the insurance policy's deductible applies to the appraisal award. First, RLF's policy states, in no uncertain terms, that "[s]ubject to the applicable limit of liability, [Lloyds] will pay only the part of the total of all loss payable that exceeds the deductible amount shown in the Declarations." (ECF No. 85-4 at 25.) The applicable deductible is "10% of the total sum insured for windstorm & earthquake or a minimum of $2,500, whichever is greater . . .." (ECF No. 85-5.) The parties have never disputed the insured amount is $1,626,000. (ECF No. 87 at 2 and ECF No. 83 at 4.) Therefore, the deductible amount RLF is required to pay before any policy coverage kicks in is $162,600. *See* ECF No. 83 at 4.

Moreover, the Umpire's appraisal award expressly states, "applicable deductibles for Parcel No. 7-2 Estate Nazareth, St. Thomas, Virgin Islands, will be subtracted from the amounts above and this RCV award is subject to all Policy terms and conditions." (ECF No. 70-1.) The appraisal award thus makes plain that the deductible amount set out in RLF's policy still applies to the appraisal award. *See id.* RLF offers no argument to refute the express terms in the policy and the appraisal award. Consequently, the Court finds that the $162,600 policy deductible applies to the final appraisal award.

### ii. Enforcement of the Umpire's Appraisal Award

Now that the Court has resolved the policy coverage issues, the next question is whether the appraisal award can be enforced.

The appraisal award, in this case, is valid, binding, and enforceable on the parties. As explained in a relatively recent case, "[a]n appraisal award is presumptively valid," and thus, a court may only set aside such an award for "'fraud, mistake, misfeasance, collusion, prejudice, or partiality.'" *Korsun v. Guardian Ins. Co.*, Civ. No. 1:18-cv-00047, 2021 WL 4942810 at *2 (D.V.I. Oct. 22, 2021) (quoting *Ambient Grp., Inc., v. Cont'l Ins. Co.*, Civ. No. 90-264, 1994 WL 326602 (D.V.I. Mar. 2, 1994)). Given that neither party has argued that the appraisal award was obtained by any wrongdoing, the award became binding upon the signature of the umpire and the parties' respective appraisers. *See id.* (characterizing the agreement by the umpire and at least one original appraisal as a "binding award") (quoting *Atlas Const. Co., Inc. v. Ind. Ins. Co., Inc.*, 309 N.E. 2d 810, 816 (Ind. Ct. App. 1974)); *see also*

*Northeast Fin. Corp. v. Ins. Co. of North America*, 757 F. Supp. 381, 384 (D. Del. 1991) (finding similar language as the language used in Section G of the policy, in this case, indicated the appraisal process was binding as to the amount owed). Therefore, because the award is binding, and the Court has now resolved any ambiguities as to coverage under the policy, the appraisal award is enforceable.[10]

### iii. Legal fees

Lloyds' final request in its motion to enforce is for the Court to order each party to "bear their own legal fees, expenses, and costs" associated with the appraisal process. (ECF No. 84 at 1.) Lloyds did not offer any legal authority or citations to support this request in the original motion to enforce. *See generally* ECF No. 85. Lloyds only offered legal support for this part of their request once RLF had already filed their response. (ECF No. 105 at 3.) Therefore, because Lloyds did not meaningfully address the issue until the reply brief, the Court will consider the argument abandoned.[11] As such, this portion of the motion will be denied without prejudice.

---

[10] RLF attempts to argue that no court enforcement was needed here, at least as to the $322,012.29 amount set out in the appraisal award, (i.e., the amount of loss to the Dwelling [$301,012.29] plus the loss to the deck area [$21,000]) because that amount was supposedly not in dispute. Assuming the $322,012.29 was not in dispute, RLF argues the insurance policy mandated that amount was due sixty days after the appraisal award was signed. (ECF No. 95 at 6.) However, as evidenced by this opinion, the $322,012.29 was in dispute. Although the parties agreed that $322,012.29 was the amount of loss for the Dwelling and deck area, the parties did not agree that was the amount Lloyds owed RLF. Lloyds has continually believed it owes $322,012.29 less the ten percent deductible whereas RLF claims Lloyds owes them the full $322,012.29. In other words, there is clearly a dispute as to the amount Lloyds owes for the dwelling and the deck area. It is disingenuous for RLF to suggest otherwise. If Lloyds had paid the $322,012.29 RLF claims was not in dispute, Lloyds would have paid nearly double what it owes to RLF. Thus, most of the final award was still in dispute when Lloyd filed its motion to enforce. Therefore, RLF's argument is without merit.

[11] *See Sterling v. Redevelopment Auth. of City of Phila.*, 511 Fed. App'x 225, 228 (3d Cir. 2013) ("Because Sterling failed to provide any citations to legal authority to support such a claim, we deem this issue abandoned.") (citing *Kost v. Kzakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993); *Martinez-Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir. 1996) ("Issues raised in a brief that are not supported by argument are deemed abandoned."); *United States v. LeCroy*, 822 Fed. App'x 968, 974 n. 6 (11th Cir. 2020) ("Because a passing reference in a brief without substantive legal argument is insufficient to preserve an issue, [defendant] has abandoned this argument."); *J.W. Gaming Dev., LLC v. James*, 2021 WL 2322265, at *3 n. 2 (N.D. Cal. June 7, 2021) (noting that "any suggestion that this maxim is only applicable in the appellate context would be incorrect.") (citing *Lias v. Cnty. of Alameda*, Civ. No. C 05-00317 SI, 2006 WL 13050, at *6 n. 5 (N.D. Cal. Jan. 3, 2006) and *Diamond Pleasanton Enter. v. City of Pleasanton*, Civ. No. 12-cv-00254-WHO, 2014 WL 939496 at *2 (N.D. Cal. Mar. 6, 2014)); *Zinn v. Seruga*, Civ. No. 05–3572, 2009 WL 3128353, at *40 (D.N.J. Sept. 28, 2009) ("[T]he Court will permit the filing of the appropriate motion with supporting legal arguments and exhibits and will not consider the request for attorney's fees until the

### III. CONCLUSION

For the reasons stated above, the Court finds that the pool area and the deck area are covered under the insurance policy. The Court also finds that the appraisal award is binding and enforceable and subject to the ten percent deductible set out in the policy. Accordingly, the Court finds that the final appraisal award is $174,412.29. This award represents the covered loss to the Dwelling ($301,012.29) plus the covered loss to the deck area ($21,000.00) and the pool area ($15,000.00) less the ten percent deductible ($162,600). Lloyds shall pay this award to RLF Nazareth, LLC within thirty days. The Court will also deny RLF's motion to strike Lloyd's motion to enforce the appraisal award.

An appropriate order follows.

**Dated:** July 12, 2023          */s/ Robert A. Molloy*
                                  **ROBERT A. MOLLOY**
                                  **Chief Judge**

---

proper motions with adequate supporting documents are filed. Because no supporting documentation was provided, the Court denies the request at this time without prejudice.").